UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | | |
|---|---|---|
| DEREK MORTLAND, | ) | CASE NO.: _____ |
| | ) | |
| Plaintiff, | ) | JUDGE: _____ |
| | ) | |
| vs. | ) | **COMPLAINT FOR INJUNCTIVE** |
| | ) | **RELIEF:** |
| RIVER CHASE HOSPITALITY INC., | ) | |
| | ) | **1ST CAUSE OF ACTION:** For Denial of |
| Defendant. | ) | Access by a Public Accommodation in |
| | ) | Violation of the Americans with Disability |
| | ) | Act of 1990 ("Title III" and "ADA"), |
| | ) | 42 U.S.C. §§ 12181 *et seq*. |

Plaintiff DEREK MORTLAND Complains of Defendant RIVER CHASE

HOSPITALITY INC., and alleges as follows:

**INTRODUCTION:**

1.      This is a civil rights action for discrimination against persons with physical

disabilities, of which plaintiff MORTLAND is a member of, for failure to remove architectural

barriers structural in nature at Defendant's property, a place of public accommodation, thereby

discriminatorily denying plaintiff access to, the full and equal enjoyment of, opportunity to

participate in, and benefit from, the goods, facilities, services, and accommodations thereof.

MORTLAND seeks injunctive relief pursuant to the Americans with Disability Act of 1990

("title III" AND "ADA"), *et sec.*

2.      MORTLAND is a person with physical disabilities who, on or about January 27,

2021 through January 28, 2021, was an invitee, guest, patron, or customer at Defendant's

property, which houses a hotel, a HAMPTON INN & SUITES, located at 3954 River Place

Drive, Macon, Georgia 31210. At said time and place, Defendant failed to provide proper legal access to the property, which is a public accommodation and/or public facility. The denial of access was in violation of federal legal requirements, and MORTLAND suffered violations of his civil rights to full and equal access and was physically injured, embarrassed and humiliated.

**JURISDICTION AND VENUE:**

3.      **Jurisdiction**: This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

4.      **Venue**: Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is the subject of this action is located in this district, in the City of Macon, County of Bibb, State of Georgia and that MORTLAND's causes of action arose in this district.

**PARTIES:**

5.      MORTLAND is a "physically handicapped person," a "physically disabled person," and a "person with physical disabilities." (Hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably, as these words have similar or identical common usage and legal meaning.) MORTLAND is a "person with physical disabilities," as defined by all applicable United States laws. MORTLAND requires the use of a wheelchair to travel about in public. Consequently, MORTLAND is a member of that portion of the public whose rights are protected.

6.      Defendant RIVER CHASE HOSPITALITY INC., a Georgia corporation, (alternatively referred to as "Defendant") is the owner and operator, lessor and/or lessee, or agent of the owner, lessor and/or lessee, franchisor and/or franchisee, of the building and/or buildings

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 2

which constitute a public facility in and of itself, occupied by HAMPTON INN & SUITES, located at 3954 River Place Drive, Macon, Georgia 31210 (hereinafter "the business"), and subject to the requirements of the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and to all other legal requirements referred to in this complaint.

7.   The business is open to the general public and conducts business therein. The business operating on said premises is a public accommodation.

8.   At all times relevant to this complaint, Defendant is the landlord/lessor, tenant/lessee and the owner and operator of the business. As such, Defendant is jointly and severally responsible to identify and remove architectural barriers pursuant to Code of Federal Regulations section 36.201(b), which states in pertinent part:

> **§ 36.201**      **General**
>
> (b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.
>
> CFR §36.201(b)

9.   MORTLAND does not know the true names of Defendant, their business capacities, their ownership connection to the property and business, nor their relative responsibilities in causing the access violations herein complained of. MORTLAND is informed and believes that the Defendant herein is a public accommodation, and is the agent, ostensible agent, master, servant, employer, employee, representative, franchisor, franchisee, partner, and associate, or

such similar capacity, of each of the other Defendants, if any, and was at all times acting and performing, or failing to act or perform, within the course and scope of his, her or its authority as agent, ostensible agent, master, servant, employer, employee, representative, franchiser, franchisee, partner, and associate, or such similar capacity, and with the authorization, consent, permission or ratification of each of the other Defendants, and is responsible in some manner for the acts and omissions of the other Defendants in legally causing the violations and damages complained of herein, and have approved or ratified each of the acts or omissions of each other defendant, as herein described. MORTLAND may seek leave to amend when the true names, capacities, connections, and responsibilities of Defendant are ascertained.

**PRELIMINARY FACTUAL ALLEGATIONS:**

10. Defendant is the entity that is a public accommodation that owns, leases (or leases to), or operates the business. The business and each of its facilities are places "of public accommodation" subject to the requirements of the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq*. On information and belief, said facility has undergone "alterations, structural repairs and additions," each of which has subjected the business to handicapped access requirements. Defendant's facility was constructed in or around 2006; the facility must comply with either the Americans with Disability Act 1991 Standards or the 2010 Standards.

11. MORTLAND is a person with a disability. MORTLAND is a "physically disabled person," as defined by all applicable United States laws. MORTLAND is paralyzed as a result of a motorcycle accident and requires the use of a wheelchair for mobility and to travel in public.

12. At all times referred to herein and continuing to the present time, Defendant

advertised, publicized and held out the business as being handicapped accessible and andicapped usable.

13. On or about January 27, 2021 through January 28, 2021, MORTLAND was an invitee and guest at the business, arriving for purposes of obtaining lodging.

14. Upon his arrival, during his patronizing of the public accommodation, and upon his exit of the facility, MORTLAND personally encountered architectural barriers which denied him the full and equal access to the property.

15. Therefore, at said time and place, MORTLAND, a person with a disability, encountered the following inaccessible elements of the business which constituted architectural barriers and a denial of the proper and legally required access to a public accommodation to persons with physical disabilities. *By way of example and not as an exhaustive inventory of Defendant's violations*, the following barriers to access were personally encountered by MORTLAND:

a. In the parking lot, the required parking signage is missing at the left most space by the north main entrance in violation of 2010 ADAS Section: 502.6.

b. In the parking lot, the required parking signage is missing at the right most space by the north main entrance in violation of 2010 ADAS Section: 502.6.

c. In the parking lot, the access aisle by the north main entrance is not located on an accessible route of travel to the accessible building entrance in violation of 2010 ADAS Section: 208.3.1, 502.3.

d. In the parking lot, the running slope of the access aisle exceeds 2% at the west side building entrance in violation of 2010 ADAS Section: 502.4.

e. In the parking lot, the curb ramp from the west side entrance access aisle to the entry door exceeds the maximum running slope (parallel to the direction of travel) allowable of 8.33% in violation of 2010 ADAS Section: 406.1.

*f.*  In the parking lot, the cross slopes (narrow dimension) and running slopes (long dimension) of the left accessible stall at the west side entry exceed 2% in violation of 2010 ADAS Section: 502.4.

*g.*  The running slope (long dimension) of the right accessible parking stall at the west side entry exceeds 2% in violation of 2010 ADAS Section: 502.4.

*h.*  In the parking lot, the parking sign is mounted too low at the left most space at the west side building entry in violation of 2010 ADAS Section: 502.6.

*i.*  In the parking lot, the parking sign is mounted too low at the right most space at the west side building entry in violation of 2010 ADAS Section: 502.6.

*j.*  In the parking lot, the parking sign is mounted too low at the left most space at the east side building entry in violation of  2010 ADAS Section: 502.6.

*k.*  In the parking lot, the parking sign is mounted too low at the right most space at the east side building entry in violation of 2010 ADAS Section: 502.6.

*l.*  In the parking lot, the cross slopes (narrow dimension) and/or running slopes (long dimension) of the east side entrance access aisle exceed 2% in violation of 2010 ADAS Section: 502.4.

*m.*  In the parking lot, the east side entrance accessible parking stall's access aisle contains a built up curb ramp which results in significant slopes greater than 2 percent in violation of 2010 ADAS Section: 502.4.

*n.*  In the parking lot, the access aisle at the east side entrance contains abrupt edges and surface irregularities over a ¼ inch in violation of 2010 ADAS Section: 502.4.

*o.*  In the passenger loading zone, the access aisle is not marked as to discourage parking in it inv isolation of 2010 ADAS Section: 503.3.3.

*p.*  In the passenger loading zone, the cross slope (narrow dimension) of the access aisle serving the pull-up space exceeds 2% in violation of 2010 ADAS Section: 503.4, 503.4 Exception.

*q.* In the passenger loading zone, the cross slope (narrow dimension) of the vehicle pull-up space exceeds 2% in violation of 2010 ADAS Section: 503.4, 503.4 Exception.

*r.* At the south entrance, the curb ramp at the south entrance exceeds the maximum running slope (parallel to the direction of travel) allowable of 8.33% in violation of 2010 ADAS Section: 406.1.

*s.* At the south side entrance, the curb ramp at the south side entrance on the accessible route has cross slopes greater than 2% in violation of 2010 ADAS Section: 405.3, 406.1.

*t.* At the east side entrance, the maneuvering clearance at the east side entrance door exceeds 2% slope in violation of 2010 ADAS Section: 404.2.4.4.

*u.* At the north main entrance, the maneuvering clearance at the north main entrance sliding doors exceeds 2% slope in violation of 2010 ADAS Section: 404.2.4.4.

*v.* At the front desk, the counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1.

*w.* At the front desk, the credit card readers are not accessible because they are above accessible reach range and are located over an obstruction greater than 34 inches tall in violation of 2010 ADAS Section: 308.3.2.

*x.* In the breakfast/dining area, there are no accessible dining surfaces 2010 ADAS Section: 226.1.

*y.* At the breakfast dining area, the top of the bistro/bar style dining surface is not within the compliant height range in violation 2010 ADAS Section: 902.3.

*z.* At the breakfast/dining area, compliant knee and/or toe clearance is not provided in violation of 2010 ADAS Section: 306.2.1.

*aa.* In the men's public restroom, the restroom door exceeds the maximum allowable opening force in violation of 2010 ADAS Section: 404.2.9.

*bb.* In the men's public restroom, the mirror is mounted too high in violation of 2010 ADAS Section: 603.3.

*cc.* In the men's public restroom, the water closet compartment is missing a loop handle on both sides of the door in violation of 2010 ADAS Section: 604.8.1.2.

*dd.* In the men's public restroom, the compartment door is not self closing in violation of 2010 ADAS Section: 604.8.1.2.

*ee.* In the men's public restroom, the toilet is not located within the range allowed from the side wall or partition in violation of 2010 ADAS Section: 604.2.

*ff.* In the men's public restroom, the toilet paper is not installed within the compliant range in violation of 2010 ADAS Section: 604.7.

*gg.* In the men's public restroom, the side grab bar does not extend far enough from the rear wall in violation of 2010 ADAS Section: 604.5.1.

*hh.* In the men's public restroom, the rear grab bar does not extend adequately past the toilet on the wide side in violation of 2010 ADAS Section: 604.5.2.

*ii.* In the men's public restroom, the rear grab bar is not a minimum 36 inches in length in violation 2010 ADAS Section: 604.5.2.

*jj.* In the men's public restroom, the rim of the urinal is above the maximum allowable height in violation of 2010 ADAS Section: 605.2.

*kk.* In guest room 106, the water and drain pipes under the lavatory are not adequately insulated in violation of 2010 ADAS Section: 606.5.

*ll.* In guest room 106, the clearance for the lavatory encroaches into the clearance required for the toilet in violation of 2010 ADAS Section: 604.3.2.

*mm.* In guest 106, the mirror is mounted too high in violation 2010 ADAS Section: 603.3.

*nn.* In guest room 106, the shelf is out of reach range because it is higher than 44 inches high in violation 2010 ADAS Section: 308.2.2.

*oo.* In guest room 106, the towel hooks are not accessible because there is not adequate clear floor space for either a forward or side approach in violation 2010 ADAS Section: 305.3.

*pp.* In guest room 106, the required 56 inches by 60 inches clear floor space for the water closet has been obstructed by the trash can in violation 2010 ADAS Section: 604.3.1.

*qq.* In guest room 106, the coat hooks are installed greater than 48 inches above the finished floor in violation of 2010 ADAS Section: 308.2.1.

*rr.* In guest room 106, the rear grab bar is too high in violation 2010 ADAS Section: 609.4.

*ss.* In guest room 106, the rear grab bar does not extend adequately past the centerline of the toilet on the wall side in violation 2010 ADAS Section: 604.5.2.

*tt.* In guest room 106, the toilet is not located within the range allowed from the side wall or partition in violation of 2010 ADAS Section: 604.2.

*uu.* In guest room 106, the toilet paper is not installed within the compliant range in violation of 2010 ADAS Section: 604.7.

*vv.* In guest room 106, the side grab bar is too high in violation 2010 ADAS Section: 609.4.

*ww.* In guest room 106, the grab is located directly above the seat in violation of 2010 ADAS Section: 608.3.2.

*xx.* In guest room 106, the grab bar is not positioned correctly on the back wall in violation of 2010 ADAS Section: 609.4.

*yy.* In guest room 106, the horizontal grab bars are not all installed at the same height in violation 2010 ADAS Section: 608.3.

*zz.* In guest room 106, the hand held sprayer unit is mounted above the required maximum height in violation 2010 ADAS Section: 608.6.

*aaa.* In guest room 106, the adjustable-height shower head vertical bar is mounted too high in violation 2010 ADAS Section: 608.6.

*bbb.* In guest room 106, the hand held sprayer unit is not equipped with a non-positive on/off control in violation of 2010 ADAS Section: 608.6.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 9

*ccc.*     In guest room 106, the operable parts of controls are not located on the back wall adjacent to the seat a maximum of 27 inches from the seat wall in violation of 2010 ADAS Section: 608.5.2.

*ddd.*     In guest room 106, the clearance in front of the shower is not compliant because the slope exceeds 2% in violation of 2010 ADAS Section: 608.2.2.1.

*eee.*     In guest room 106, The floor drain is set too low in the floor which causes a steep slope and/or vertical changes of elevation greater than 1/4 inch in violation of 2010 ADAS Section: 303.3.

*fff.* In guest room 106, the maneuvering clearance on the pull side of the bathroom door extends less than 18 inches beyond the latch side of the door in violation of 2010 ADAS Section: 404.2.4.1.

*ggg.*     In guest room 106, the operating hardware is missing and the closet doors require tight grasping and pinching to operate in violation of 2010 ADAS Section: 309.4.

*hhh.*     In guest room 106, neither leaf of the closet doorway provides at least 32 inches between the sliding door and the opposite stop in violation of 2010 ADAS Section: 404.2.3, 404.2.2.

*iii.* In guest room 106, the kitchenette mirror is mounted too high in violation of 2010 ADAS Section: 603.3.

*jjj.* In guest room 106, the kitchen counter top is too high in violation of 2010 ADAS Section: 804.3.2.

*kkk.*     In guest room 106, the top of the sink is above the allowable height requirement in violation of 2010 ADAS Section: 606.3.

*lll.* In guest room 106, the coat hooks are out of the maximum allowable reach range for a side approach in violation of 2010 ADAS Section: 308.3.1.

*mmm.*   In guest room 106, the outlet out of the maximum allowable reach range for a side approach in violation of 2010 ADAS Section: 308.3.1.

*nnn.*    Upon information and belief, other public use areas are in violation of 2010 ADAS Section: Recommended.

*ooo.*    Upon information and belief, in the other mobility-accessible guest rooms, there are not enough accessible rooms designed with mobility features in violation of 2010 ADAS Section: 224.2.

*ppp.*    Upon information and belief, in the other mobility-accessible guest rooms, rooms may not be dispersed among the various classes of sleeping accommodations in violation of 2010 ADAS Section: 224.5.

*qqq.*    Upon information and belief, in the other mobility-accessible guest rooms, the vanity countertop space provided may not be comparable to non-accessible rooms in violation of 2010 ADAS Section: 806.2.4.1.

16. The discriminatory violations described in ¶ 15 are not an exclusive list of the Defendant's violations. MORTLAND requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the Americans with Disability Act of 1990 ("title III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*

17. At all times stated herein, the existence of architectural barriers at Defendant's place of public accommodation evidenced "actual notice" of Defendant's intent not to comply with the Americans with Disability Act of 1990 ("title III" and "ADA"), 42. U.S.C. §§ 12181 *et seq.*, either then, now or in the future.

18. As a legal result of Defendant's failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to MORTLAND and other persons with disabilities, MORTLAND suffered damages as alleged herein.

19. As a further legal result of the actions and failure to act of Defendant, and as a

legal result of the failure to provide proper handicapped-accessible public facilities as set forth herein, MORTLAND was denied his civil rights to full and equal access to public facilities. MORTLAND suffered a loss of his civil rights and his rights as a person with physical disabilities to full and equal access to public facilities, and further suffered from physical injury, shame, humiliation, embarrassment, anger, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court.

20. MORTLAND is "physically handicapped," "physically disabled," or a "person with physical disabilities" who was denied his rights to equal access to a public facility by Defendant. Defendant maintained a public establishment without access for persons with physical disabilities as stated herein, and continues as of the date of filing this complaint to deny equal access to MORTLAND and other persons with physical disabilities in these and other ways.

21. On information and belief, construction and/or alterations carried out by Defendant have triggered access requirements under Americans with Disability Act of 1990 ("TITLE III AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*

22. MORTLAND, as described herein below, seeks injunctive relief to require the business to be made accessible to meet the requirements of the Americans with Disabilities Act, so long as Defendant operates and/or leases the business as a public facility.

23. On information and belief, Defendant has been negligent in its affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

24. Because of Defendant's violations, MORTLAND and other persons with physical

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 12

disabilities are unable to use public facilities such as those owned and operated by Defendant on a "full and equal" basis unless such facility is in compliance with the provisions of the Americans with Disabilities Act. MORTLAND seeks an order from this court compelling Defendant to make the business accessible to persons with disabilities.

25. MORTLAND is informed and believes and therefore alleges that Defendant caused the subject property to be constructed, altered and maintained in such a manner that persons with physical disabilities were denied full and equal access to, within and throughout said facility of the business and were denied full and equal use of said public facility. Further, on information and belief, Defendant has continued to maintain and operate said facility in such conditions up to the present time, despite actual and constructive notice to such Defendant that the configuration of the establishment and/or its building(s) is in violation of the civil rights of persons with physical disabilities, such as MORTLAND and the disability community. Such construction, modification, ownership, operation, maintenance and practices of such public facilities are in violation of law as stated in the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*

26. On personal knowledge, information and belief, the basis of Defendant's actual and constructive notice that the physical configuration of the facilities including, but not limited to, architectural barriers constituting the business was in violation of the civil rights of persons with physical disabilities, such as MORTLAND, includes, but is not limited to, communications with invitees and guests, owners of other establishments and businesses, notices Defendant obtained from governmental agencies upon modification, improvement, or substantial repair of the subject premises and other properties owned by the Defendant, newspaper articles and trade

publications regarding the Americans with Disabilities Act and other access laws, public service announcements, and other similar information. Defendant's failure, under state and federal law, to make the establishment accessible is further evidence of Defendant's conscious disregard for the rights of MORTLAND and other similarly situated persons with disabilities. The scope and means of the knowledge of Defendant are within Defendant's exclusive control and cannot be ascertained except through discovery. Despite being informed of such effect on MORTLAND and other persons with physical disabilities due to the lack of accessible facilities, Defendant knowingly and willfully refused to take any steps to rectify the situation and to provide full and equal access for MORTLAND and other persons with physical disabilities to the establishment. Said Defendant has continued such practices, in conscious disregard for the rights of MORTLAND and other persons with physical disabilities, up to the date of filing of this complaint, and continuing thereon.

27. MORTLAND visits the Macon, Georgia area on an annual basis when he travels from Ohio to Seibring, Florida for the Chin Track Days motorsports safety foundation instructor level II certification program; Macon serves as a convenient lodging location when he travels on I-75. MORTLAND will return to the HAMPTON INN & SUITES to obtain lodging due to the hotel's convenient location, if the business is made fully accessible to a disabled person in a wheelchair, and to also avail himself of the business' services. Furthermore, MORTLAND intends to return to the business as an ADA tester on an annual basis, beginning in January 2022, in order to ascertain whether Defendant removed the barriers to access which are the subject of this litigation.

I.   **FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq*.)**

28.     MORTLAND pleads and incorporate by reference, as if fully set forth again

herein, the allegations contained in paragraphs 1 through 27 of this complaint.

29.     Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C.

§12101 regarding persons with physical disabilities, finding that laws were needed to more fully

protect:

> some 43 million Americans with one or more physical or mental
> disabilities; [that] historically society has tended to isolate and
> segregate individuals with disabilities; [that] such forms of
> discrimination against individuals with disabilities continue to be a
> serious and pervasive social problem; [that] the nation's proper
> goals regarding individuals with disabilities are to assure equality
> of opportunity, full participation, independent living and economic
> self-sufficiency for such individuals; [and that] the continuing
> existence of unfair and unnecessary discrimination and prejudice
> denies people with disabilities the opportunity to compete on an
> equal basis and to pursue those opportunities for which our free
> society is justifiably famous.

30.     Congress stated as its purpose in passing the Americans with Disabilities Act of

1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and
> comprehensive national mandate for the elimination of
> discrimination against individuals with disabilities; (2) to provide
> clear, strong, consistent, enforceable standards addressing
> discrimination against individuals with disabilities; (3) to ensure
> that the Federal government plays a central role in enforcing the
> standards established in this act on behalf of individuals with
> disabilities; and (4) to invoke the sweep of Congressional
> authority, including the power to enforce the 14th Amendment and
> to regulate commerce, in order to address the major areas of
> discrimination faced day to day by people with disabilities.

31.     As part of the Americans with Disabilities Act of 1990, (hereinafter the "ADA"),

Congress passed "Title III - Public Accommodations and Services Operated by Private Entities"

(Section 301 42 U.S.C. §12181, *et seq*.). Among the public accommodations identified for

purposes of this title was:

> (7) PUBLIC ACCOMMODATION - The following private
> entities are considered public accommodations for purposes of this
> title, if the operations of such entities affect commerce -
> ***
> (A) an inn, hotel, motel or other place of lodging ***.
>
> 42  U.S.C. §12181(7)(A).

32.     Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated

against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation by any person

who owns, leases, or leases to, or operates a place of public accommodation."

33.     The specific prohibitions against discrimination set forth in §302(b)(2)(a),

42 U.S.C. §12182(b)(2)(a) are:

> (i) the imposition or application of eligibility criteria
> that screen out or tend to screen out an individual with a disability
> or any class of individuals with disabilities from fully and equally
> enjoying any goods, services, facilities, privileges, advantages, or
> accommodations, unless such criteria can be shown to be
> necessary for the provision of the goods, services, facilities,
> privileges, advantages, or accommodations being offered;
>
> (ii) a failure to make reasonable modifications in
> policies, practices, or procedures, when such modifications are
> necessary to afford such goods, services, facilities, privileges,
> advantages or accommodations to individuals with disabilities,
> unless the entity can demonstrate that making such modifications
> would fundamentally alter the nature of such goods, services,
> facilities, privileges, advantages, or accommodations;

(iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

(iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

The acts of Defendant set forth herein were a violation of MORTLAND's rights under the ADA, 42. U.S.C. §§ 12181 *et seq.*

34.     On information and belief, construction work on, and modifications of, the business occurred after the compliance date for the Americans with Disabilities Act, January 26, 1992, independently triggering access requirements under Title III of the ADA; due to the date of construction, mandatory compliance is required and there is no readily achievable defense.

*35.*     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et seq.*, §308, MORTLAND is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis of disability in violation of this title or have reasonable grounds for believing that he is about to be subjected to discrimination in violation of §302. MORTLAND cannot return to or make use of the public facilities complained of herein so long as the premises and Defendant's

policies bar full and equal use by persons with physical disabilities.

36.     Per §308(a)(1) (42 U.S.C. 12188), "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions." Pursuant to this last section, MORTLAND has not returned to Defendant's premises since on or about January 27, 2021 through January 28, 2021, but on information and belief, alleges that Defendant has continued to violate the law and deny the rights of plaintiff and of other persons with physical disabilities to access this public accommodation. Pursuant to §308(a)(2), "In cases of violations of §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title."

37.     MORTLAND seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees. MORTLAND will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

Wherefore, plaintiff prays for relief as hereinafter stated.

**PRAYER:**

Wherefore, MORTLAND prays that this court grant relief and damages as follows:

**I.     PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS  BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS  WITH DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, et seq.)**

1.     For injunctive relief, compelling Defendant to make the business readily

accessible to and usable by individuals with disabilities; and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered.

      2.      For attorneys' fees, litigation expenses and costs of suit, if MORTLAND is deemed the prevailing party; and

      3.      For such other and further relief as the court may deem proper.

Respectfully submitted,

BLAKEMORE, MEEKER & BOWLER CO., L.P.A.

/s/ *COLIN G. MEEKER*
COLIN G. MEEKER (Ohio Bar No. 0092980)
495 Portage Lakes Dr.
Akron, Ohio 44319
Telephone: (330) 253-3337
Facsimile: (330) 253-4131
cgm@bmblaw.com

Attorney for Plaintiff DEREK MORTLAND